IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

In the Matter of the Estate of:

GLORIA DOLORES B. ACCIAVATTI, *Deceased.*

---

KIM DINEEN, *Petitioner/Appellee,*

and

JILL K. SHIBATA, *Respondent/Appellee,*

*v.*

JEFFREY KOTCHKA, *Respondent/Appellant.*

No. 1 CA-CV 25-0606 PB

FILED 07-15-2026

---

Appeal from the Superior Court in Maricopa County
No. PB2023-003522
The Honorable Sarah Selzer, Judge, *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Jeffrey Kotchka, Peoria
*Respondent/Appellant*

Tiffany & Bosco, Phoenix
By Nora L. Jones, Vanessa R. Heim, Krysta C. Furnell
*Counsel for Petitioner/Appellee Kim Dineen*

## OPINION

Judge Brian Y. Furuya delivered the opinion of the Court, in which Presiding Judge Andrew M. Jacobs and Judge James B. Morse Jr. joined.

**F U R U Y A**, Judge:

¶1        Jeffrey Kotchka appeals the superior court's admission of his mother's will to formal probate and the appointment of his sister, Kim Dineen, as the personal representative of the estate. Because his arguments are unsupported by any valid authority, we affirm.

¶2        More concerning, however, is Mr. Kotchka's failure to ensure the validity of legal citations in his opening brief that he obtained through use of generative artificial intelligence ("Gen-AI"), including his inclusion of hallucinated authorities. Because of these misrepresentations of law, we impose sanctions under Arizona Rule of Civil Appellate Procedure ("ARCAP") 25, Arizona Revised Statutes ("A.R.S.") Section 12-349, and the court's inherent powers to manage its affairs.

## FACTS AND PROCEDURAL HISTORY

¶3        On June 18, 2023, Gloria B. Dolores Acciavatti ("Decedent") died at the age of 93 years old, leaving behind her three adult children: Kim Dineen, Jeffrey Kotchka, and Jill Shibata. A few months after her death, Dineen applied for informal appointment as Special Administrator of the Estate, and upon reviewing the Decedent's records, discovered the Estate had no assets for her to marshal because they were titled in Kotchka's name. In February 2024, Dineen filed a Petition for Adjudication of Intestacy, Determination of Heirs, and Appointment of Personal Representative. Both of Dineen's siblings opposed this petition.

¶4        The trial court held a hearing on the matter and then appointed Dineen as the Personal Representative of the Estate in July 2025. Later that month, the trial court issued an Order for Formal Probate of Will and Appointment as Personal Representative. Kotchka timely appealed this Order.

¶5        In his appeal, Kotchka made various arguments regarding "Due Process & Fair Hearing" and "Material Errors of Fact & Law." However, Kotchka's opening brief contained "legal citations" that were inaccurate and false. Upon reviewing these citations, we ordered Kotchka

to appear at a show cause hearing and testify under oath as to them. Before this hearing, we also asked Kotchka to submit an explanation addressing his citations, which he did. In his written explanation, Kotchka stated that he relied on "independent internet research . . . utiliz[ing] artificial-intelligence-assisted research tools."

¶6        We have jurisdiction pursuant to A.R.S. Section 12-2101(A)(1).

## DISCUSSION

**I.        Because Kotchka's Opening Brief Violated ARCAP 13, We Strike its Inaccurate and False Citations.**

¶7        An appellant's opening brief must contain, among other things, a statement of the background facts, the issues presented on appeal, and an "argument" containing the appellant's contentions. ARCAP 13(a)(5)–(7). That argument must include citations to applicable legal authorities, references to the record, and a statement of the appropriate standard of review. ARCAP 13(a)(7)(A)–(B). "An appellant who fails to make a bona fide and reasonably intelligent effort to comply with the rules will waive issues and arguments not supported by adequate explanation, citations to the record, or authority." *Ramos v. Nichols*, 252 Ariz. 519, 522 ¶ 8 (App. 2022) (citation modified). The Arizona Supreme Court has stated that self-represented litigants "must not only respect the dignity of the courtroom, but also 'comply with relevant rules of procedural and substantive law.'" *State v. Gomez*, 231 Ariz. 219, 223 ¶ 15 (2012) (quoting *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)). Thus, in Arizona, self-represented litigants are held to the same standards as attorneys and are not afforded any special leniency. *Ramos*, 252 Ariz. at 522 ¶ 8. When faced with misconduct by either attorneys or self-represented litigants, we "may impose sanctions that are appropriate in the circumstances of the case, and to discourage similar conduct in the future." ARCAP 25. Sanctions can include, among other things, dismissal, *see, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (stating courts may "fashion an appropriate sanction for conduct" including "outright dismissal"), or striking all or part of a brief, *see, e.g.*, *Burney v. Huntimer*, 1 CA-CV 19-0542 FC, 2020 WL 5666901, at *1 n.1 (Ariz. App. Sept. 24, 2020) ("Noncompliance with ARCAP 13 is ground for either striking the brief or imposing another type of sanction[.]").

¶8        Here, Kotchka's brief provides no citations to the record on appeal. Further, Kotchka's brief fails to cite proper legal authority. Instead, it contains eight citations, six of which are deficient. The citation errors

include the use of cases for principles that are not supported by the case, mis-citation to wrong pages or paragraphs, misstatement of rules enunciated in cases, and misrepresentation of case facts. Most concerning, the brief cites two cases that simply do not exist.

¶9        Because of the brief's inaccurate and false citations, we strike each such citation. Significantly, the brief contains no other supportive legal authority for its arguments.

¶10        In his written explanation in response to our order to show cause, Kotchka stated he relied on Gen-AI in writing his brief and blames it for the inaccuracies and falsities of his citations. At the show-cause hearing, Kotchka testified that he had not reviewed this court's publicly-available materials to assist self-represented litigants found on its website.[1] His testimony made clear he did not use legal research tools or materials provided by public law libraries to verify the citations in his brief. He did not seek professional legal help to assist in verifying his citations. Indeed, he admitted he did nothing to independently verify the citations. We appreciate his candor, but all litigants, whether appearing through lawyers or in their own person, must ensure their filings comply with all applicable rules and law. *Gomez*, 231 Ariz. at 223 ¶ 15; *see also* ARCAP 25 (noting we may impose sanctions for violations of ARCAP). Reliance on Gen-AI does not excuse or ease this requirement. Thus, Kotchka has not made a "bona fide and reasonably intelligent effort" to comply with ARCAP 13's requirements. *Ramos*, 252 Ariz. at 522 ¶ 8. This failure to comply with ARCAP 13 may be treated as a waiver of all issues and the superior court's order may be affirmed on this ground. *See id.* at 523 ¶¶ 10–11; *see also* ARCAP 25. We do so here and affirm the court's order.

## II.        The Use of Hallucinated Case Citations Constitutes Abuse of Gen-AI and Is Sanctionable Conduct.

¶11        Because the issue of Gen-AI inaccuracies and hallucinated authorities in court filings—whether included in those filed by self-represented litigants or attorneys—poses a recurring and increasing

---

[1]        These materials are accessible, without cost, through the court's official website: **coa1.azcourts.gov**, by clicking on the links under the menu labeled "Self-Represented." They include the court's "Guides for Self-Represented Litigants," which advise of the need to read and follow applicable rules.

problem that has not been squarely addressed by any prior published Arizona authority, we do so now.

### A.     Non-Abusive Use of Gen-AI

**¶12**          To begin, we emphasize that using Gen-AI is not, in and of itself, objectionable. We recognize the promise artificial intelligence tools, including those leveraging Gen-AI, offer for enhancing access to justice for those without the resources to retain counsel or to represent themselves effectively, provided the person signing the brief checks to make sure all the cases they cite are real and accurately cited, and provided the person signing the brief checks to make sure they are correctly citing true facts in the record. Participating in litigation can present challenges to self-represented litigants that Gen-AI may be able to help address. For example, presently, Gen-AI can check grammar, suggest edits for clarity and concision, summarize large documents and other data, and conduct a host of other helpful tasks that have the potential to aid self-represented litigants in preparing legal documents and filings. As long as new technology is used in ways that comply with the important rules requiring truth and diligence in court filings—like Arizona Rule of Civil Procedure 11 and ARCAP 25— then that new technology can be a great aid to self-represented litigants and lawyers alike.

### B.     Dangers and Limitations in Using Gen-AI in Legal Drafting

**¶13**          While Gen-AI can help with editing and processing large amounts of information, it also presents dangers if used to perform legal research and write a brief without careful and diligent work to check the material it creates. In short, when left unchecked, it is an unreliable narrator and researcher. Gen-AI sometimes—perhaps even frequently—produces inaccurate or meritless legal theories and research results. Included among those inaccuracies are citations to legal authorities that simply do not exist, a phenomenon commonly known as "hallucination." Thus, careless use of Gen-AI can lead to creation of briefs and other filings which present meritless legal theories or cite misleading, fake, or nonexistent legal authorities, an issue that is rapidly becoming common in our courts. An ever-growing body of evidence and experience demonstrates that Gen-AI is woefully inadequate at reliably providing accurate and trustworthy citations to valid legal authorities. *See, e.g.*, *Sanders v. United States*, 176 Fed. Cl. 163, 169 (2025) ("It is no secret that generative AI programs are known to 'hallucinate' nonexistent cases, and with the advent of AI, courts have seen a rash of cases in which both counsel and *pro se* litigants have cited

such fake, hallucinated cases in their briefs."); *Hardy v. Whitaker*, 351 F.R.D. 84, 97 (E.D. Mich. Mar. 2, 2026) (noting work by legal analyst tracking "more than 500 legal decisions about AI-generated hallucinated content in the United States"), *appeal filed*, No. 26-1277 (6th Cir. Mar. 19, 2026). *See also* D. Charlotin, AI Hallucination Cases https://www.damiencharlotin.com/hallucinations/ (last accessed July 13, 2026) (cataloguing 1,751 instances of AI-generated hallucinated content in legal documents described in court decisions from across the globe, 1208 of which were found in U.S. court filings).

¶14　　Nor does it appear that Gen-AI tools will soon be able to fix the problem. As one federal circuit court put it, "[t]he hallucination problem has no end in sight, as AI's tendency to fabricate results arises from the training and structures of AI programs." *Fletcher v. Experian Info. Sols., Inc.*, 168 F.4th 231, 233 (5th Cir. 2026).

¶15　　Despite its limitations, Gen-AI tools do not meaningfully restrict or prohibit users from attempting to employ them for legal research or writing legal arguments, at least in their present incarnations. Self-represented litigants can input a simple prompt into Gen-AI tools and instantly receive a lengthy complaint, motion, or brief that includes plausible-looking legal theories and arguments with apparently supportive citations. If not carefully checked, the results can look, superficially, like competent and convincing legal work product. But they very often are not.

### C.　Abusive Use of Gen-AI in Legal Drafting

¶16　　Despite the dangers, both attorneys and self-represented litigants are increasingly relying on Gen-AI tools to conduct legal research and to draft filings, including briefs. *See e.g.*, *In re Domestic P'ship of Torres Campos & Munoz*, 342 Cal. Rptr. 3d 227, 236 (App. 2026) (recognizing the "increasing incidence of hallucinated case citations generated by AI tools"). A major problem in using Gen-AI for legal work of this kind, however, is that many litigants do little to nothing to verify the accuracy of Gen-AI-produced legal work product, essentially abdicating their own duty to ensure accuracy in their filings, *see Gomez*, 231 Ariz. 219, 223 ¶ 15; ARCAP 13, 25; Ariz. R. Civ. P. 11(b), to the tool, which is not designed to assure the accuracy that the law requires. Failure to act with reasonable diligence to check—and correct—any work product created using Gen-AI that is submitted to the courts constitutes abuse of Gen-AI tools in litigation.

¶17　　We acknowledge that self-represented litigants in particular face challenges when using Gen-AI tools for legal research because such

litigants may be unaware that these tools frequently generate hallucinations. Indeed, use of Gen-AI can give self-represented litigants a false sense of confidence in their filings. And often, these litigants lack convenient access to professional legal databases to verify citations, requiring them to visit public law libraries or hire professional legal help for that purpose. But this cannot, and does not, excuse filing of legal documents that contain and rely on nonexistent or otherwise inaccurate legal authorities or present meritless legal arguments. *See Gomez*, 231 Ariz. 219, 223 ¶ 15 (self-represented litigants must "comply with relevant rules of procedural and substantive law"); ARCAP 25; *see also* Ariz. R. Civ. P. 11(b) (requiring litigants to conduct reasonable inquiry into the basis in fact and law for all claims represented in a pleading or motion prior to filing).

**¶18**        Thus, whether attorney or self-represented litigant, all who file documents with the courts remain directly and personally responsible for the content, accuracy, and quality of legal filings submitted to all courts, including this court. *Ramos*, 252 Ariz. at 522 ¶ 8. Providing hallucinated case citations to the court fails to fulfill this requirement, since reasonable diligence in verifying citations with trusted sources will reveal their falsity. Accordingly, citing a hallucinated case in a legal filing is sanctionable conduct. *See* ARCAP 25.

### D.    The Opening Brief's Abusive Use of Gen-AI Is Sanctionable

**¶19**        Dineen requests award of her costs and attorneys' fees, citing ARCAP 25 and A.R.S. Sections 12-341, 12-349, and 14-1105. As the prevailing party, Dineen is awarded her costs pursuant to A.R.S. Sections 12-341 and -342(A). In the exercise of our discretion, we deny fees under A.R.S. Section 14-1105.

**¶20**        We turn to consideration of an award of attorneys' fees under A.R.S. Section 12-349 and ARCAP 25, specifically as a sanction for Kotchka's abusive use of Gen-AI. The court shall order attorneys' fees against a party if the party "[b]rings or defends a claim without substantial justification." A.R.S. § 12-349(A)(1). A claim is "without substantial justification" if it "is groundless and is not made in good faith." A.R.S. § 12-349(F). "A fees award under § 12-349(A)(1) requires groundlessness *and* the absence of good faith." *Ariz. Republican Party v. Richer*, 257 Ariz. 237, 247 ¶ 34 (2024).

**¶21**        "A claim is groundless if the proponent can present no rational argument based upon the evidence or law in support of that claim."

*Id.* at 243 ¶ 15 (citation modified). And though a claim is not groundless when it is "fairly debatable" or a "long shot," "a party's indifference to a claim's invalidity may constitute the absence of good faith even without an intent to harass or delay or other evidence of affirmative bad faith." *Id.* at 243, 248 ¶¶ 15, 38. Thus, a claim is made in bad faith when it is both objectively groundless and when "the party or attorney knows *or should know* that it is groundless, *or is indifferent* to its groundlessness, but pursues it anyway." *Id.* at 248 ¶ 38 (emphasis added).

**¶22**  Additionally, we have long held that courts have "the inherent power to sanction bad faith conduct during litigation independent of the authority granted by" procedural rule or statute. *Hmielewski v. Maricopa Cnty.*, 192 Ariz. 1, 4 ¶ 14 (App. 1997). "These powers are governed by 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)).

**¶23**  Misrepresenting the law to the court constitutes bad faith conduct in litigation. The courts are places for resolution of disputes based on fact and law. As such, courts must be able to presume that those who come before them are acting truthfully, and the rule of law requires us to call out untruthfulness, as here. Misrepresenting the law to the courts by presenting hallucinated cases as legitimate authority poses a profound danger that threatens to undermine the legal process. Thus, imposing sanctions on litigants engaging in misrepresentation through abuse of Gen-AI services and tools promotes the integrity of the judicial process. *See generally*, *Whiting v. City of Athens*, 170 F.4th 455, 466 (6th Cir. 2026) (discussing how misuse of Gen-AI tools may harm our adversarial system).

**¶24**  Here, the opening brief presented no arguments supported by accurately cited legal authority and offered no record citations to evidence in support of its claims, making those claims objectively groundless. Kotchka's claims were also not made in good faith because he admitted to taking no action whatsoever to assure the validity of the work product produced by his use of Gen-AI, demonstrating indifference to the groundlessness of his claim. Nor did Kotchka move to amend his brief to correct its failings or offer to withdraw his appeal after the Appellee made him aware of those failings in its answering brief. Nor did he do so after his appearance at the show-cause hearing. Instead, at each of these steps, he chose to continue to maintain his claims despite his opening brief's containing hallucinations and no adequate supportive legal authority. As a result, Kotchka violated A.R.S. Section 12-349 in both asserting and maintaining his claims because they were groundless and not made in good

faith. *See Richer*, 257 Ariz. at 249 ¶ 41 (applying A.R.S. § 12-349(A) to maintaining sanctionable claims).

¶25 Kotchka stated that he is not a trained lawyer and his inclusion of the hallucinated cases and misrepresentations as to other citations was unintentional, and so he requests indulgence. But as noted, both attorneys and self-represented litigants must abide by the same rules, *Ramos*, 252 Ariz. at 522 ¶ 8, and it is not permissible for either to misrepresent the law to the courts, *Gomez*, 231 Ariz. 219, 223 ¶ 15. And Kotchka admitted that he did nothing to independently verify the accuracy of the authorities he cited in his opening brief. As explained, we rely on litigants to base their arguments upon facts and law that are truthful and accurate. Submission of hallucinated case citations—intentional or unintentional—is unjustifiable. To accept a defense of lack of ill intent would legitimize reckless indifference to the truth and accuracy of court filings and tolerate some level of misrepresentation. This we will not do. *See id.* at 466. Instead, any person who files pleadings, motions, or briefs with the courts may not offload their duty to ensure the truth and accuracy of their representations of fact and law in their filings to any technological tool, including Gen-AI tools. *See* ARCAP 13, 25.

¶26 In using hallucinated case citations provided by Gen-AI and doing nothing to discover and correct the falsity of those citations, Kotchka presented filings to this court that misrepresented the law. Kotchka's lack of conscious intent to deceive this court is no defense to failing to act reasonably to ensure his briefs accurately represented the facts and law. *Gomez*, 231 Ariz. 219, 223 ¶ 15. Therefore, in view of this record, Kotchka's conduct in this case is sanctionable as a violation of A.R.S. Section 12-349, ARCAP 25, and the court's inherent powers to manage its affairs. *See Whiting*, 170 F.4th at 461 ("Citing even a single fake case can be sanctionable . . . .").

¶27 In imposing sanctions for this conduct, we join the many courts nationwide that have confronted this problem by imposing sanctions on both attorneys and self-represented litigants who file briefs containing hallucinations. *See, e.g., Whiting*, 170 F.4th at 466–67; *Deutsche Bank Nat'l Tr. Co. v. LeTennier*, 250 N.Y.S. 3d 260, 266 (App. Div. 2026) ("Courts throughout the country which have been confronted with AI-generated authorities have concluded that filing papers containing hallucinated cases and fabricated legal authorities may be sanctionable[.]"); *Wilcox v. Gingrinch*, 274 N.E.3d 1269 (Ind. Ct. App. 2026) (similar); *Kruse v. Karlen*, 692 S.W.3d 43 (Mo. Ct. App. 2024) (similar); *Shahid v. Esaam*, 918 S.E.2d 198 (Ga. Ct. App. 2025) (similar).

### E.    Awarding Dineen Attorneys' Fees Appropriately Sanctions the Opening Brief's Abusive Use of Gen-AI

¶28    Sanctions must be "appropriate in the circumstances of the case" and are meant to "discourage similar conduct in the future." ARCAP 25. Sanctions may include contempt, dismissal, monetary fines, or withholding or imposing costs or attorneys' fees. *Id.*

¶29    Although Kotchka's asserted lack of intent to purposefully deceive and his lack of legal training do not excuse his misrepresentation of the law to this court and will not absolve him from sanctions, those circumstances do inform our inquiry as to what sanctions may be appropriate. Thus, we turn to the question of what sanctions to impose for his abusive use of Gen-AI in this case.

¶30    Kotchka's pursuit of this appeal required Dineen to expend more resources than usual and reasonable to decipher the record and arguments, as well as identify the hallucinated cases Kotchka wrongly presented and maintained. Dineen was compelled to file the necessary briefing and attend a show cause hearing for an appeal that lacked merit.

¶31    Because the opening brief relies on hallucinated and misrepresented case citations and because of the failure to ensure the accuracy of those citations, the appropriate sanction here is to award Dineen that portion of her reasonable attorneys' fees under A.R.S. Section 12-349 and ARCAP 25 incurred due to the use of hallucinated and misrepresented case citations. We award those fees against Kotchka and in favor of Dineen, contingent upon Dineen's compliance with ARCAP 21. And we award Dineen her costs on appeal, also contingent upon her compliance with ARCAP 21.

### CONCLUSION

¶32    We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR

10